UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCOIS P. GIVENS,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS AND<br>REHABILITATION, et al.,<br><br>　　　　　　Defendants. | No. 2:19-cv-0017 KJN P<br><br><br>ORDER |

I. Introduction

　　　　Plaintiff is a state prisoner, proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

　　　　Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

　　　　Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated to make monthly

payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

As set forth below, plaintiff's complaint must be dismissed because he has joined, in one pleading, unrelated claims that do not all arise from the same transaction, occurrence, or series of transactions or occurrences. However, plaintiff is granted leave to file an amended complaint.

II. Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a

formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, at 555. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic, 550 U.S. at 555). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78. Plaintiff's factual allegations must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy,

3

588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert. denied, 442 U.S. 941 (1979). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

III. Discussion

    A. Improper Joinder

Plaintiff's lengthy complaint alleges numerous violations of his First, Eighth and Fourteenth Amendment rights, including supplemental state law claims, against twenty defendants arising from incidents at Deuel Vocational Institute and California State Prison, Solano, where he is presently housed. Plaintiff's allegations concern medical care, accommodations under the Americans with Disabilities Act, the handling of administrative grievances, access to the courts, and alleged retaliation. Plaintiff seeks wide-ranging injunctive relief and money damages in his 96-page filing.[1]

"The plaintiff who files a kitchen-sink complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims

---

[1] In his accompanying declaration, plaintiff claims he does not waive any privilege or confidentiality for any documents submitted as exhibits, and that he submitted exhibits "confidentially" to the court for retention in chambers and for use in screening the complaint. (ECF No. 1 at 60.) He asks that after screening, the court return to him the exhibits or copies of the exhibits so he can redact and serve certain exhibits with the complaint and then re-file with the court. However, when plaintiff submitted his complaint and exhibits to the court, all of his documents were scanned into the court's electronic record and remain a part of the court record, accessible to the public.

4

might have legal support. . . . It is the plaintiff['s] burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." Gurman v. Metro Housing & Redevelopment Authority, 842 F.Supp.2d 1151, 1153 (D. Minn. 2011), citing Fed. R. Civ. P. 8, 11.

Here, plaintiff is attempting to join myriad unrelated claims against multiple defendants in one action. A plaintiff may properly assert multiple claims against a single defendant. Fed. Rule Civ. P. 18. In addition, a plaintiff may join multiple defendants in one action where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Unrelated claims against different defendants must be pursued in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). In other words, joining more than one claim in a single complaint is proper when the claims are against the same defendant, but joining multiple defendants in one complaint is proper only if the claims against them are based on the same facts. This rule is intended "not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees -- for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George, 507 F.3d at 607.

Plaintiff's claims do not arise from the same transaction, occurrence, or series of transactions and occurrences in which all defendants were involved. Plaintiff's improper joinder of his myriad claims cannot be remedied by dismissal of the unrelated claims because it is unclear which claims he wants to pursue in this action, and which claims he will choose to pursue in separate lawsuits. See Fed. R. Civ. P. 21. Thus, plaintiff's complaint must be dismissed. Plaintiff is granted leave to file an amended complaint in which he raises only those claims arising from the same incident involving the same defendants.

B. Class Action

In addition, plaintiff seeks class certification. Plaintiff, however, is a non-lawyer

5

proceeding without counsel. It is well established that a layperson cannot ordinarily represent the interests of a class. See McShane v. United States, 366 F.2d 286 (9th Cir. 1966). This rule becomes almost absolute when, as here, the putative class representative is incarcerated and proceeding pro se. Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975). In direct terms, plaintiff cannot "fairly and adequately protect the interests of the class," as required by Rule 23(a)(4) of the Federal Rules of Civil Procedure. See Martin v. Middendorf, 420 F. Supp. 779 (D. D.C. 1976). This action, therefore, will not be construed as a class action and instead will be construed as an individual civil suit brought by plaintiff. Plaintiff should not include class allegations in any amended complaint.

        C. Claims Concerning the Handling of Administrative Appeals

Plaintiff's complaint also includes myriad allegations challenging the handling of his administrative appeals, claiming defendants violated plaintiff's Fourteenth Amendment due process and First Amendment rights.

The Due Process Clause protects plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). However, plaintiff has no stand-alone due process rights related to the administrative grievance process. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (holding that there is no protected liberty interest to a grievance procedure). California's regulations grant prisoners a purely procedural right: the right to have a prison appeal. See CAL. CODE REGS. tit. 15, §§ 3084-3084.9 (2014). In other words, prison officials are not required under federal law to process inmate grievances in a certain way. Thus, the denial, rejection, screening out of issues, review, or cancellation of a grievance does not constitute a due process violation. See, e.g., Evans v. Skolnik, 637 F. App'x 285, 288 (9th Cir. 2015) (a prison official's denial of a grievance does not itself violate the constitution), cert. dism'd, 136 S. Ct. 2390 (2016); Wright v. Shannon, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment); Towner v. Knowles, 2009 WL 4281999 at *2 (E.D. Cal. Nov. 20, 2009) (allegations that prison officials screened out his inmate appeals

without any basis failed to indicate a deprivation of federal rights); Williams v. Cate, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims."). Similarly, plaintiff may not impose liability on a defendant simply because he played a role in processing plaintiff's inmate appeals. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (because an administrative appeal process is only a procedural right, no substantive right is conferred, no due process protections arise, and the "failure to process any of Buckley's grievances, without more, is not actionable under section 1983.").

Plaintiff also claims his First Amendment rights were violated by prison officials' handling of grievances. Plaintiff does have a right under the First Amendment to file grievances complaining about prison official misconduct. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). However, plaintiff does not allege that he was prevented from filing grievances. Rather, he disagrees with the manner in which his allegations were addressed or handled within the grievance process. The undersigned has found no precedent suggesting that prison officials are required under the Constitution or other federal law to handle or respond to prison grievances in a particular way, or that the First Amendment requires that grievances be handled in a certain way. See Wright v. Shannon, 2010 WL 445203 at *5. "[T]he First Amendment does not guarantee any particular form of redress for those grievances." Id. As discussed above, plaintiff does not have a constitutional right to a specific prison grievance procedure. Ramirez, 334 F.3d at 860.

Therefore, all of plaintiff's First and Fourteenth Amendment due process claims based on the handling of his administrative appeals fail to state cognizable federal civil rights claims and are dismissed. Dismissal is without leave to amend as amendment of such claims would be futile.

D. Standards Governing Remaining Claims

In an effort to assist plaintiff in determining how to prepare his amended complaint or additional complaints, the undersigned provides the following relevant standards.

1. Eighth Amendment Medical Care

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate

indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted). In addition, mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122 ("The deliberate indifference doctrine is limited in scope.").

### 2. Eighth Amendment Claims Premised on Health Care Appeals

As discussed above, the denial of an administrative appeal does not state a due process claim. However, allegations that a defendant failed to adequately respond to a prisoner's serious

medical needs, after becoming aware of those needs through the appeals process, may state a cognizable Eighth Amendment claim. See Jett, 439 F.3d at 1097-98 (prison administrators may be "liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help"); Payan v. Tate, 2017 WL 880422, at *5 (E.D. Cal. Mar. 6, 2017) ("Plaintiff has not merely complained that the defendants reviewed or denied his inmate appeal. Rather, plaintiff has alleged that he put the reviewing defendants on notice through the inmate appeals process, establishing knowledge, that plaintiff had ongoing serious medical conditions and was not receiving proper care."), report and recommendation adopted, 2017 WL 1214015 (E.D. Cal. Mar. 31, 2017).

Thus, the requirements for stating a cognizable Eighth Amendment claim for deliberate indifference to plaintiff's serious medical needs within the context of the administrative appeal process are the same as those outside the appeals context: plaintiff must plausibly allege how defendant had personal knowledge of plaintiff's serious medical needs, and how each defendant's response to those needs, or failure to act, violated plaintiff's right to constitutionally adequate medical care.

### 3. Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011), overruled on other grounds by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Plaintiff need not prove that the alleged retaliatory action, in itself, violated a constitutional right. Pratt v. Rowland, 65 F.3d 802, 806 (1995) (to prevail on a

retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997) (upholding jury determination of retaliation based on filing of a false rules violation report); Rizzo v. Dawson, 778 F.2d 527, 531(transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim). Rather, the interest asserted in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive. However, not every allegedly adverse action will support a retaliation claim. See, e.g., Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on "the logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this'") (citation omitted).

The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendant's conduct. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the challenged conduct. Pratt, 65 F.3d at 806 (citing Rizzo v. Dawson, 778 F.2d at 532). Mere allegations of retaliatory motive or conduct will not suffice. A prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 n.1 (10th Cir. 1990). Verbal harassment alone is insufficient to state a claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). Even threats of bodily injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act itself. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

### 4. Access to the Courts

Prisoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement without direct interference from prison officials. Lewis v. Casey, 518 U.S. 343, 350 (1996); Bounds v. Smith, 430 U.S. 817, 824–25 (1977); Silva v. Di Vittorio, 658 F.3d at 1103. However, the right of access is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal

appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354. To claim a violation of this right, a plaintiff must show that he has suffered an actual injury as a result of the alleged interference. Christopher v. Harbury, 536 U.S. 403, 415 (2002); Lewis, 518 U.S. at 351. In other words, he must be able to show that the deprivation has directly impacted the relevant litigation in a manner adverse to him. Lewis, 518 U.S. at 348 (defining "actual injury" as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim"). While a prisoner has a constitutional right to access the courts, alleged interferences must have caused the prisoner to sustain an actual injury. Id. at 351; Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009).

### 5. ADA Claim[2]

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. To prove a Title II claim, plaintiff must demonstrate that (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). A disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A).

Title II of the ADA "unmistakably includes State prisons and prisoners within its coverage." Pennsylvania Dept. of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998). "Further, medical care is one of the 'services, programs, or activities' covered by the ADA." Payne v. Arizona, 2012 WL 1151957, at *3 (D. Ariz. Apr. 5, 2012) (citing Kiman v. N.H. Dept. of Corrs., 451 F.3d

---

[2] Although plaintiff styled his pleading as a "Complaint Under the Civil Rights Act and Americans with Disabilities Act," plaintiff does not allege specific acts of discrimination, and does not include ADA causes of action in his short statement of claims (ECF No. 1 at 44-57.) In an abundance of caution, the court includes the standards governing ADA claims.

274, 284 (1st Cir. 2006)). The "alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as . . . medical care . . . constitutes exclusion from participation in or . . . denial of the benefits of the prison's services, programs, or activities." United States v. Georgia, 546 U.S. 151, 157 (2006).

However, "[w]hile evidence of discriminatory medical care can constitute a claim under the ADA, claims based solely on provision of inadequate or negligent medical care are not cognizable under the ADA." Payne, 2012 WL 1151957, at *4 (citing Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1021-22 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1997) ("The ADA does not create a remedy for medical malpractice."); Marlor v. Madison Cty., Idaho, 50 F. App'x 872, 873 (9th Cir. 2002) ("Inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld by reason of a disability.") ).

Additionally, "[t]o recover monetary damages under Title II of the ADA . . . a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). Intentional discrimination is established by showing the defendant acted with "deliberate indifference." Id. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139. A plaintiff must "identify 'specific reasonable' and 'necessary' accommodations that the [defendant] failed to provide" and show the defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." Id. at 1140.

### 6. State Medical Malpractice Claim Standards

In California, to state a medical malpractice claim, the plaintiff must plausibly allege: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Hanson v. Grode, 76 Cal. App. 4th 601, 606, 90 Cal.Rptr.2d 396 (1999) (citations and internal quotation marks omitted).

Federal courts do not have jurisdiction over state law claims except pursuant to the court's supplemental jurisdiction. See 28 U.S.C. § 1367(a) ("district courts shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution"). Supplemental or "[p]endent jurisdiction over state claims exists when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is a common nucleus of operative fact between the state and federal claims." Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995) (citation and internal quotation marks omitted). However, district courts may decline to exercise supplemental jurisdiction over a claim, 28 U.S.C. § 1367(c), and the Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

### 7. Injunctive Relief

A party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008). The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and can show that an injunction is in the public interest, a preliminary injunction may issue so long as serious questions going to the merits of the case are raised and the balance of hardships tips sharply in plaintiff's favor. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

The principle purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful decision after a trial on the merits. See 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2947 (3d ed. 2014). Implicit in this required showing is

that the relief awarded is only temporary and there will be a full hearing on the merits of the claims raised in the injunction when the action is brought to trial. Preliminary injunctive relief is not appropriate until the court finds that the plaintiff's complaint presents cognizable claims. See Zepeda v. United States Immigration Serv., 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claims; [however] it may not attempt to determine the rights of persons not before the court.").

In cases brought by prisoners involving conditions of confinement, any preliminary injunction must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Further, an injunction against individuals not parties to an action is strongly disfavored. See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment . . . resulting from litigation in which he is not designated as a party. . . .").

### 8. Eleventh Amendment

> "[I]t is well-established that state agencies enjoy Eleventh Amendment immunity from suit. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (concluding that the Nevada Department of Prisons was a state agency entitled to Eleventh Amendment immunity). The doctrine established in Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908), providing an exception to Eleventh Amendment immunity for suits against state officials seeking prospective equitable relief, is limited to claims against individual state officials and does not extend to agencies. Nat'l Audubon Soc'y v. Davis, 307 F.3d 835, 847 (9th Cir. 2002) (explaining that even in a suit seeking prospective relief in the mold of Ex parte Young, "state agencies are [ ] immune from suit because they are state entities, not individual state officers").

Shallowhorn v. Molina, 572 F. App'x 545, 547 (9th Cir. 2014).

## IV. Leave to Amend

Because plaintiff has joined unrelated claims from myriad alleged incidents at different prisons against different defendants, the complaint must be dismissed. The court will, however, grant leave to file an amended complaint.

If plaintiff chooses to amend the complaint, plaintiff may join multiple claims if they are

14

all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim against the same defendant based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b). As discussed above, unrelated claims against different defendants must be pursued in multiple lawsuits.

> The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim . . . may join, [] as independent or as alternate claims, as many claims . . . as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); see also Fed. R. Civ. P. 20(a)(2) (joinder of defendants not permitted unless both commonality and same transaction requirements are satisfied).

Also, plaintiff must demonstrate how the conditions about which he complains resulted in a deprivation of plaintiff's constitutional rights. See, e.g., West v. Atkins, 487 U.S. 42, 48 (1988). Also, the complaint must allege in specific terms how each named defendant is involved. Rizzo v. Goode, 423 U.S. 362, 371 (1976). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. at 371; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff is not required to append exhibits to any amended complaint.

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint

supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's complaint is dismissed.

4. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

    a. The completed Notice of Amendment; and

    b. An original and one copy of the Amended Complaint.

Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must also bear the docket number assigned to this case and must be labeled "Amended Complaint."

Failure to file an amended complaint in accordance with this order may result in the dismissal of this action.

Dated: April 1, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/give0017.14

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCOIS P. GIVENS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>　　　　　Defendants. | No. 2:19-cv-0017 KJN P<br><br><br>NOTICE OF AMENDMENT |

　　　Plaintiff hereby submits the following document in compliance with the court's order filed_____.

DATED:　　_____　　　Amended Complaint

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　Plaintiff